LEWIS, The HENRY. See Case No. 6,377.

LEWIS, The MATILDA A. See Case No. 9,281.

LEWISTON (PHELPS v.). See Case No. 11,076.

## Case No. 8,336.

### The LEXINGTON.

[1 Adm. Rec. 167.]

Superior Court, Florida. April 11, 1835.

SALVAGE—AMOUNT—SALE OF VESSEL.

[1. The court awarded a moiety, amounting to $6,875, where the vessel and cargo aground on the Florida reef would have been a total loss but for the timely assistance of the salvors, rendered at great hazard.]

[2. A sale of the damaged vessel requested by her master will not be ordered, though the repairs will nearly equal her present value, where the court does not think it to the interest of her owners and insurers and the owners of the cargo.]

[This was a libel for salvage by Richard Roberts and others against the brig Lexington and cargo.]

A. Gordon, Esq., for libellants.
W. R. Nackley, for respondent.

WEBB, J. This cause, in its most important feature, is similar to many others which have been decided by this court. It is of that class in which the preservation of the property has been wholly dependent upon the exertions of the salvors, without whose exertions, and rendered, too, in the most timely and efficient manner, everything must have been lost. The vessel struck upon one of the most dangerous parts of the Florida reef, at a time when the wind was blowing heavily and the sea running so high, as to break over her with almost every wave, and she was driven so high upon the rocks as to render it impossible for the crew to have gotten her off, even though every part of her lading had been thrown overboard. Indeed, so thoroughly convinced was Capt. Perry of his inability to relieve her, or to save any portion of the cargo (after throwing overboard his entire deck load), he prepared himself to abandon her in his boat, and was only prevented doing so by the appearance of the wreckers, and the prospect which was thus afforded of obtaining assistance. The services of the actors were therefore immediately secured, and the

whole of the remaining cargo was transferred from the brig to the smaller vessels by them, under circumstances of peculiar difficulty, and of great hazard to their own property, and personal danger to themselves; and the brig was then taken from the rocks, and brought to this port, after receiving so much injury while thumping upon them as to require a sum of money almost equal to her present value to put her in a proper state of repair. It is a general rule of decision in this court, and I believe in all other courts of admiralty in this country, when property has been saved from inevitable destruction, under circumstances of much difficulty, hazard and risk to the salvors, to direct that one moiety of that property, or its value, be paid as a compensation for the services thus rendered. This rule, it is true, is not inflexible, and should yield to extraordinary circumstances; as, if the property saved were of great value, and its preservation was not attended with extraordinary danger and labour on the part of the salvors, the proportion of salvage in reference to that value would be much diminished; and, on the other hand, if the value of the property were small, and the hazard and labour of saving it very great, the proportion should be increased so as to afford a compensation in some degree equivalent to the services rendered.

In this case, however, there is nothing perceived which should take it out of the ordinary rule, and the proportion established by it will be decreed to the actors as a reward for their timely and meritorious exertions.

The court has also taken into consideration the request of Captain Perry, that a sale of the brig be directed in the decree to be rendered in this cause, in consequence of the great injury she has sustained, and the difficulty of getting such repairs made at this port as are indispensable to enable her to proceed in safety to sea. But upon an examination of the report of the port wardens as to her condition and value, and the cost necessary to repair her, the court believes that it is not to the interest of those to whom she belongs, or to the office where she is insured, that she should be sold; especially as a sale of her would make it necessary that the whole of her cargo should likewise be sold, as that portion of it which will remain after the payment of salvage could not be reshipped for its destined port without incurring an expense for the charter of a vessel which its value would not justify.

Whereupon it is ordered, adjudged and decreed, that the marshal, after giving five days' notice of the time and place of sale, proceed to sell at public outcry, for cash, the bacon, loose pork, molasses, and such other articles pertaining to the cargo of the brig Lexington as have been reported by the surveyors as being already damaged, or likely to become so by being kept on hand, and so much of the residue of said cargo as will. with that already specified, produce the sum of $6,875

(being 50 per cent. of the appraised value of said brig and cargo), and also the costs of this suit, and that, after raising said sums of money, he pay them into the registry of this court to be distributed according to the terms of this decree; and that he forthwith restore said brig to Nathan Perry, Esquire, her commander, in order that he may have such repairs put upon her as will enable her to proceed to sea; and, after raising said sums of money as aforesaid, that he then restore all the residue of said cargo to the said Nathan Perry, for and on account of all concerned and interested therein. And it is further ordered, adjudged, and decreed, that out of the sums of money to be raised, and paid into the registry of the court, the clerk pay the libellant Roberts,' on account of himself and all others concerned, and interested as salvors, in this cause, the aforesaid sum of $6,875, in full for the services rendered by them in saving said brig and cargo; and that he also pay out and distribute the costs of this suit to the persons entitled to the same.